**FILED**

**June 28, 2018**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 2:55 PM**




# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| **MICHAEL WILLIAMS,**<br>Employee,<br><br>v.<br><br>**PMC BIOGENIX, INC.,**<br>Employer,<br>**And**<br>**TRAVELERS,**<br>Insurance Carrier. | **Docket No.: 2016-08-0177**<br><br><br>**State File No.: 15641-2015**<br><br><br>**Judge: Deana Seymour** |

---

## COMPENSATION HEARING ORDER

---

The parties agreed that Michael Williams sustained a compensable mental injury on February 15, 2015, at PMC Biogenix, Inc. (PMC). The central legal issues are whether Mr. Williams reached maximum medical improvement (MMI) on February 15, 2017, or December 7, 2017, and whether Mr. Williams is entitled to permanent total disability benefits (PTD) or permanent partial disability benefits (PPD) under Tennessee Code Annotated section 50-6-242 (2017) (extraordinary relief). The Court heard this matter at a Compensation Hearing on May 23, 2018, and holds Mr. Williams reached MMI on February 15, 2017, and is entitled to extraordinary relief of 225 weeks of PPD.

## History of Claim[1]

Mr. Williams worked as a maintenance coordinator for PMC when he witnessed a twenty-foot silo tank explode and coordinated efforts to extinguish the resulting fire. He became weak and had slurred speech, chest pain, and high blood pressure after battling the fire. Dr. John Cooper, Mr. Williams' authorized psychologist, diagnosed and treated him for work-related post-traumatic stress disorder (PTSD). Mr. Williams ultimately returned to work, and Dr. Cooper placed him at MMI on August 13, 2015, with no permanent impairment.

Some time later, Mr. Williams experienced two more fires at work and returned to

---

[1] *See* Appendix at 7, 8 of this Order for party stipulations.

Dr. Cooper in October 2015. Dr. Cooper determined Mr. Williams suffered a "significant relapse in his recovery from the [PTSD] from the fire on February 15, 2015." Dr. Cooper took Mr. Williams off work because "[t]he traumas he has experienced reduced his functioning to such a point that it would be unsafe for him to work." Dr. Cooper began a more intensive treatment regimen and noted, "I believe that we are seeing the cumulative effect of these trauma[s] and that the effects will be deeper and more long-lasting than previously."

PMC eventually provided Mr. Williams with a panel of psychiatrists from which he selected Dr. Randall Moskovitz. Mr. Williams reported nightmares, poor sleep, increased anxiety, increased depression, and flashbacks that disrupted his daily routine and functioning. Dr. Moskovitz diagnosed him with PTSD and major depressive disorder. He kept Mr. Williams off work, prescribed medication, and ordered counseling with Tom Middleton, which Mr. Williams continued at the time of this hearing.

Relying on Tennessee Code Annotated section 50-6-207(1)(D), PMC stopped temporary benefits on February 15, 2017, contending Mr. Williams reached MMI one hundred four weeks after the date of his mental injury. However, Dr. Moskovitz did not place Mr. Williams at MMI or assign an impairment rating until December 7, 2017. He determined Mr. Williams retained permanent impairment of fifteen percent to the body and certified he could no longer perform his pre-injury work.

Then, Mr. Williams underwent a vocational assessment with Dr. Chrisann Schiro-Geist. Dr. Schiro-Geist described Mr. Williams as a man with average intelligence. She testified that Mr. Williams could not return to his previous employment and he had no transferrable skills. She found he rarely left his house during the year after the work incident, but he later returned to church and occasionally worked out at the gym. Dr. Schiro-Geist noted Mr. Williams testified at the hearing before a room of people without difficulty. She believed Mr. Williams retained a ninety percent vocational disability and could not sustain full-time employment at that time but concluded he was not permanently and totally disabled.

Mr. Williams testified that he worked forty-two years for PMC and fought over forty-three fires within the plant before the "big bang." Initially he could not interact with people and stopped going to church. He is now married, attends church regularly, and attended disaster relief training to assist with church security. Mr. Williams testified that he does not attend large gatherings and occasionally dreams about the "big bang." He described himself as "personable" and a "leader." Mr. Williams testified he could not return to PMC but was not disabled. He types well and has years of experience scheduling work activities and implementing departmental procedures. Mr. Williams intended to pursue employment.

*Contested Issues*

The parties disagreed on the extent of Mr. Williams' vocational disability. Mr. Williams argued he was not permanently and totally disabled. Rather, he was entitled to 275 weeks of PPD under Tennessee Code Annotated section 50-6-242 since his impairment rating was greater than ten percent, his ATP certified he can no longer perform his pre-injury occupation, and he was not earning at least seventy percent of his pre-injury average weekly wage. Mr. Williams testified that he could work, and Dr. Schiro-Geist believed he was not permanently and totally disabled. Mr. Williams also contended he reached MMI on December 7, 2017, when Dr. Moskovitz concluded he was at MMI and assigned a fifteen percent impairment rating.

To the contrary, PMC contended Mr. Williams was permanently and totally disabled. It asserted Mr. Williams was prohibited from returning to PMC and has made no attempt to return to work. PMC relied on Dr. Schiro-Geist's conclusions that Mr. Williams could not tolerate crowds and had no transferrable skills. It argued Mr. Williams' ATP had not cleared him to return to work. PMC maintained Mr. Williams reached MMI on February 15, 2017. The parties stipulated PMC was entitled to a credit of $45,180.00 for permanent disability benefits paid from February 16, 2017, to December 7, 2017.[2]

## Findings of Fact and Conclusions of Law

*Standard Applied*

At a Compensation Hearing, Mr. Williams must establish all elements of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6).

*MMI*

The Court first considers when Mr. Williams reached MMI. Mr. Williams claimed he reached MMI on December 7, 2017, when Dr. Moskovitz concluded he reached MMI. PMC countered that Mr. Williams reached MMI on February 15, 2017, which is 104 weeks after he suffered the mental injury.

Tennessee Code Annotated section 50-6-207(1)(D) controls this issue:

(D) An employee claiming a *mental injury* . . . shall be *conclusively presumed* to be at maximum medical improvement upon the *earliest occurrence* of the following:
(i) At the time the treating psychiatrist concludes the employee has reached

---

[2] The Court notes PTD ($167,056.00) is $66,144.00 less than 275 weeks of PPD ($233,200.00).

maximum medical improvement; or . . .

(iii) One hundred four (104) weeks after the date of injury in the case of *mental injuries where there is no underlying physical injury[.]*

(Emphasis added.) Based on a plain reading of this statute, the Court holds Mr. Williams reached MMI on February 15, 2017. Thus, PMC is entitled to the stipulated credit of $45,180.00 for permanent disability benefits paid from February 16, 2017, to December 7, 2017.

*PTD Benefits*

PMC contends Mr. Williams is entitled to PTD under Tennessee Code Annotated section 50-6-207(4)(B), which provides: "When an injury . . . totally incapacitates the employee from working at an occupation that brings the employee income, the employee shall be considered totally disabled[.]" To assess whether an employee is permanently and totally disabled, the Court must consider a number of factors to ascertain "a complete picture of an individual's ability to return to gainful employment." *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 535 (Tenn. 2006). These factors include the employee's skills, education, age, training, and "job opportunities in the immediate and surrounding communities, and the availability of work suited for an individual with that particular disability." *Id.* at 535-36.

Here, the Court observed Mr. Williams as a well-spoken, motivated individual. He competently and credibly responded to questions. Mr. Williams has continued to undergo counseling and had not returned to work at the time of the hearing. Mr. Williams described himself as "a leader." He can type well and has years of experience in scheduling and implementing procedures. Although Mr. Williams did not believe he could return to PMC, he was confident he could find work in his community and intended to do so.

Dr. Moskovitz rated Mr. Williams' impairment at fifteen percent to the body as a whole and certified he could no longer perform his pre-injury work. Dr. Schiro-Geist performed a vocational assessment and determined Mr. Williams had average intelligence for his age. While Dr. Schiro-Geist did not believe he could return to his previous employment or that he had transferrable skills, she concluded Mr. Williams was not permanently and totally disabled, he retained a ninety percent vocational disability, and he could return to the workforce once his treating psychiatrist released him to do so.

Based on this evidence, the Court holds Mr. Williams' mental injury did not permanently and totally incapacitate him from working at any occupation that brings him income. Therefore, Mr. Williams is not entitled to PTD benefits.

4

*PPD Benefits*

Since Mr. Williams is not entitled to PTD benefits, the Court must determine the extent of PPD to which he is entitled. Tennessee Code Annotated sections 50-6-207 and 50-6-242 direct the Court's analysis.

Initially, Mr. Williams was entitled to sixty-seven and one-half weeks of PPD based on his permanent impairment rating of fifteen percent. *See* Tenn. Code Ann. § 50-6-207(3)(A). Since Mr. Williams did not return to work within sixty-seven and one-half weeks of his MMI day, he is entitled to increased benefits. Tennessee Code Annotated section 50-6-207(3)(B) provides that the employee may claim increased benefits if he has not returned to work for any employer or has returned to work receiving less wages or salary than he received before his work injury. The award provided by this section is known as the "resulting award," which is calculated by applying certain multipliers to the original award. Mr. Williams qualifies for two of the multipliers: The parties stipulated that Mr. Williams did not successfully return to work (1.35) and is over forty years old (1.2). Thus, the resulting award would total $92,728.80, equating to PPD of 24.3 percent disability to the whole body (including the original award).

However, Mr. Williams claimed entitlement to extraordinary relief under Tennessee Code Annotated section 50-6-242(a). This allows the Court to award additional PPD (a maximum 275 weeks, including the original award), if the Court determines by clear and convincing evidence that the PPD award under section 50-6-207(3)(A) is "inequitable in light of the totality of the circumstances" and that the following facts are true:

- The ATP rated the employee at or above ten percent to the body;
- The ATP certified the employee can no longer perform his pre-injury occupation due to permanent restrictions from the injury; and,
- The employee is earning less than seventy percent of his pre-injury, average weekly wage.

In this case, the parties stipulated to all three of these facts.

The Court holds that this is an extraordinary case. Limiting his award to 24.3 percent to the body would be "inequitable in light of the totality of the circumstances" because it is substantially less than the vocational disability rating of Dr. Shiro-Geist. Although Mr. Williams was intelligent and motivated, and he possessed skills that would enable him to work, he was sixty-two years old when he reached MMI and could not return to his job of forty-two years. In view of the above, the Court finds Mr. Williams established by clear and convincing evidence that limiting his PPD to 24.3 percent would be inequitable. Thus, the Court awards Mr. Williams 225 weeks of benefits amounting to

5

$190,800.00.[3] With the stipulated credit of $45,180.00, PMC owes Mr. Williams $145,620.00 in PPD.

**IT IS, THEREFORE, ORDERED:**

1. PMC and/or its carrier shall pay Mr. Williams a lump sum of $15,028.00, representing seventy-one weeks of benefits ($60,208.00) minus PMC's credit ($45,180.00) for accrued PPD benefits.

2. PMC and/or its carrier shall pay Mr. Williams ongoing PPD benefits on biweekly basis until it pays 154 weeks of benefits for a total of 225 weeks.

3. Counsel for Mr. Williams may file a petition for attorney's fees and expenses.

4. This Court taxes the filing fee of $150.00 to PMC and/or its carrier under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (May 2018).

5. PMC and/or its carrier shall prepare and submit a Statistical Data Form within ten business days of the date of this judgment.

6. Absent an appeal, this Order becomes final thirty days after entry.

**ENTERED June 28, 2018.**

_____
**JUDGE DEANA C. SEYMOUR**
**Court of Workers' Compensation Claims**

---

[3] An award of 225 weeks of benefits equates to a fifty-percent disability to the body.

## APPENDIX

Exhibits:
1. Medical Records of Dr. John Cooper
2. Medical Records of Dr. Randall Moskovitz and counselor Tom Middleton
3. Benefit Payment History
4. Report of Dr. Chrisann Schiro-Geist
5. Wage Statement
6. Joint Pre-Hearing Statement

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Expedited Hearing Order Denying Employer's Petition
4. Transfer Order
5. Scheduling Order
6. Notice of Filing Physician Certification Form Signed by Dr. Moskovitz, M.D.
7. Joint Pre-Compensation Hearing Statement
8. Employer's Pre-Compensation Hearing Brief
9. Employee's Position Statement
10. Dispute Certification Notice

Stipulations

1. Employee sustained an injury by accident arising out of the course and scope of his employment with employer
2. Employee's date of injury is February 15, 2015.
3. Employee gave notice of the injury to the Employer on February 15, 2015.
4. Employee is 63 years old and a resident of Shelby County.
5. Employee has completed the 12th grade and has obtained a high school diploma or GED.
6. Employee received authorized medical treatment for the injury with the following medical providers: Dr. John Cooper and Dr. Randall Moskovitz. Medical expenses were paid by the Employer or its workers' compensation insurance carrier/administrator in the amount of $38,189.41.
7. Employee reached maximum level of medical improvement that the nature of the injury permits on either February 15, 2017, or December 7, 2017.
8. Employer received temporary total disability benefits. Temporary total disability benefits were paid from February 16, 2015, to February 15, 2017, in the amount of $79,645.89. Temporary partial disability benefits were paid in this matter from July 7, 2015 to July 13, 2015 in the amount of $487.49.
9. Employee has not returned to work for Employer, earning the same or greater wages as the employee was earning prior to the injury.

7

10. Employee is entitled to a weekly compensation rate of $903.50 for temporary total disability benefits and a weekly compensation rate of $848.00.

11. The parties agree that Employee is entitled to an off-set of $45,180.00 in previously paid permanent benefits against any benefits ordered by the Court as a result of the Compensation.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on June 28th, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Stephen F. Libby, Employee's Attorney | | | x | steve@lnlawmemphis.com |
| Kevin W. Washburn, Employer's Attorney | | | x | kwashburn@allensummers.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

8